ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ELVIN CARABALLO<br><br>Parte Recurrido<br><br>v.<br><br>SUNRUN PR OPERATIONS, LLC Y OTROS<br><br>Parte Recurrente | TA2025RA00052 | Revisión Administrativa procedente del Departamento de Asuntos al Consumidor<br><br>Querella Núm. PON-2023-0004587<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO)-Practicas Engañosas, consentimiento viciado e incumplimiento de contrato |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

Comparece SUNRUN PR OPERATIONS, LLC y/o SUNRUN, INC (SunRun o recurrido) mediante recurso de *Revisión Administrativa* presentado el 7 de julio de 2025, en la cual nos solicita que dejemos sin efecto la *Resolución* emitida el 29 de abril de 2025, notificada el 1 de mayo de 2025 por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el DACo declaró la resolución del contrato entre el señor Elvin Caraballo (recurrido) y SunRun, debido a supuestas prácticas engañosas, consentimiento viciado e incumplimiento contractual.

Por los fundamentos que expondremos a continuación, revocamos la *Resolución* recurrida.

## I.

El 31 de agosto de 2023, el recurrido radicó una *Querella* ante el DACo, en la cual alegó que las placas solares vendidas por SunRun no le corrían toda la casa como se acordó; y, además, alegó

fraude y falsificación de firma, ya que adujo que no había firmado ningún contrato.[1] Por tanto, solicitó que se rescindiera el contrato de financiamiento con SunRun, ya que, el mismo era uno fraudulento que nunca firmó. Igualmente, solicitó que se llevaran las placas solares y que dejaran su techo en iguales o mejores condiciones en las que se encontraba.

El 15 de mayo de 2024 y el 18 de octubre de 2024, el DACo le solicitó al recurrido mediante llamada telefónica y carta, que anunciara el perito electricista, con el cual establecería la negligencia alegada en la *querella*.[2] Por su parte, Bright Ops presentó una *Moción de Desestimación por Falta de Jurisdicción*.[3] El 4 de marzo de 2025, DACo celebró una vista administrativa.

Como resultado de dicha vista, el 29 de abril de 2025, DACo emitió una *Resolución* en la que declaró "Ha Lugar" la *querella* radicada por el señor Elvin Caraballo.[4] El referido foro razonó que, SunRun infringió en práctica engañosa, consentimiento viciado, incumplimiento contractual. Ante ello, ordenó la resolución del contrato entre SunRun y el señor Elvin Caraballo; además, le ordenó a SunRun que removiera a su costo el sistema fotovoltaico localizado en la residencia del recurrido. Por último, DACo estableció las siguientes determinaciones de hechos:

## DETERMINACIONES DE HECHOS

1. El 31 de agosto de 2024, se notificó de la querella presentada por el señor Elvin Caraballo en la que en síntesis se expuso: haberse comunicado con persona de nombre Javier Vega Camargo de Bright PLANET Solar para orientación de pla.cas solares (tel. 939-239-7029). Que este le envió una vendedora Raquel Torres (e-mail: moemit@icloud.com-- tel. 939-588-8755); que la persona Raquel llegó a su casa y le orientó que necesitaba 13 placas y una Batería TESLA para que corriera toda la casa. Que la vendedora le dijo que luego de instalar las placas tenía que firmar el contrato; pero nunca firmó ningún documento; que instalaron las placas y no funcionaron ni corrían toda la casa como la

[1] Entrada #3, Anejo 5 y 5(a) del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Íd., Anejo 6 y 6(a) del SUMAC TPI.
[3] Íd., Anejo 8 del SUMAC TPI.
[4] Entrada #2 del SUMAC TPI.

vendedora se lo había vendido. Que instalaron las placas y se le envió unos contratos de financiamiento con SunRun que nunca firmó y que contiene unas firmas que ella falsificó a computadora, que no son su firma. Que en desacuerdo con la transacción fraudulenta se comunicó en varias ocasiones con Raquel Torres y con Javier Vega y no quisieron ni reparar el sistema, ni llevarse las placas. Que la última vez que vio al técnico Julián vino a desconectar las placas en febrero porque no funcionan y porque el banco SunRun PR Operations LLC ordenó a desconectar por falta de pago.

2. Así el querellante solicitó la rescisión del contrato de financiamiento con SunRun PR Operations LLC, que se lleven las placas solares y se deje la casa en igual o mejor condición a de lo que estaba la propiedad, sin rotos en el techo ni rotos de cablería que sea reparado el techo por gotear el cuarto de las hijas pues lo rompieron al instalar las placas solares quedaron en enviar un "link" para recibir unas fotos; enviar personal a repararlo y no fue recibido por el querellante.

3. Al 31 de octubre de 2024, mediante Enmienda Administrativa se incluyó en la querella a la compañía Bright Panel Solar Inc.

4. La compañía Bright Ops fungió como instalador del sistema fotovoltaico.

5. La compañía Bright Panel Solar Inc. fungió en concepto de vendedora y mediante representación de la compañía SunRun Operation LLC, esta última otorgó el financiamiento para el alquiler del sistema solar fotovoltaico para generar energía eléctrica, instalado en el hogar del querellante. El equipo es de propiedad de SunRun.

6. Al 13 de enero de 2025, Bright Ops mediante representante legal presentó Moción Urgente Asumiendo Representación Legal sin someterse a la jurisdicción. Se informó de dirección física y postal del agente residente: 1654 Calle Tulipans Ste 1200 San Juan PR 00927-6242. De la Oficina designada de Bright Ops: 78 Calle Ambar Senderos de Montehiedra San Juan PR 00926. (Ello en relación a la vista administrativa del 13 de enero de 2025).

7. También Bright Ops mediante representante legal presentó (13/enero/2025) Solicitud de Desestimación por Falta de Jurisdicción. Se expone que se otorgó un Contrato de generación de energía renovable entre el Querellante y SanRun, que dicho contrato contiene una Cláusula de selección de foro en el que las partes acordaron atender reclamaciones mediante Arbitraje, de ocurrir disputas entre estos. De entre todos los asuntos planteados, se solicitó la Desestimación por falta de jurisdicción sobre la existencia de una Cláusula de Arbitraje y además, conforme a la Interpretación 2022-003 del Secretario del DACO (en aquel entonces Lcdo. Edan Rivera Rodriguez, 9 de febrero de 2022), en torno a que la queja principal del querellante es en torno

a una alegada generación del sistema fotovoltaico instalado y que no le "mueve la casa", entendiendo a su juicio que ello sea evaluado por el Negociado de Energía de Puerto Rico, no por DACO.

8. El 4 de marzo de 2025 se recibió ante DACO por parte de SunRun Operations LLC documento: Moción Asumiendo Representación Legal, Moción solicitando asistencia a vista administrativa mediante videoconferencia y Moción de Desestimación por falta de Jurisdicción. (Mociones presentadas día antes de la vista administrativa). Así adujo, entre otros asuntos, que el reclamo del querellante es uno de electricidad y de producción; que el contrato entre el Querellante y SunRun Operations LIC es uno de compra de energía (no de productos) cuyo sistema de energía renovable es propiedad de SunRun. Que entre el querellante y SunRun existe una cláusula de selección de foro (Arbitraje); que en asuntos relacionados a la producción de energía DACO está impedido de actuar directamente.

9. Además, el 13 de enero de 2025 DACO- Oficina Regional Ponce cursó mediante correo electrónico (10:37 am), al representante legal Ledo. Néstor Zamora, de la compañía Bright Ops, (instalador del sistema) copia de Notificación de Querella que consta en expediente administrativo.

10. En cuanto a los reclamos presentados ante DACO respecto a comercios que ofrecen servicios de venta instalación y/o mantenimiento de sistemas con placas solares mediante Interpretación 2022-002 emitida por el Secretario del DACO, tanto el Negociado de Energía de Puerto Rico (NEPR) como el DACO ostentan jurisdicción en torno a controversias relacionadas a los sistemas de placas solares.

11. El DACO ostenta jurisdicción para atender querellas relacionadas a servicios de paneles o placas solares en controversias referente a servicios de garantías (Nieves Santiago v. West Power Solutions Inc, KLRA201900110). Alegaciones por incumplimiento contractual, por productos defectuosos; sean estos las placas solares o las baterías. (Roldan Concepción y Otros y Vélez y otros, KLCE202000583). Cualquier controversia contractual relacionada a la adquisición de un producto (placas o baterías), la instalación de dicho producto, y los servicios prestados en relación a los mismos. (Ángel L Cardona Meléndez y/o Nemesia Díaz Garay vs. Máximo Solar Industries Inc. KLRA202000527).

12. Conforme a copia de documento que consta en expediente administrativo surge el contrato denominado SUNRUN INC.- Sunrun Bright Box tm Agreement entre el señor Elvin Caraballo y SUNRUN PR OPERATIONS LLC para el alquiler de un sistema solar fotovoltaico para generar energía eléctrica con (1) Batería, (1) Inversor (13) Paneles Solares que se instalará en su hogar localizado en la carretera 132 H5 Int. Bo. Pastillo en Ponce PR 00730. FECHA: 04/26/2022. Contrato de 42 páginas.

13. EL PLAZO del contrato es por el termino de 25 años con un costo total de $36,390.00.

14. Conforme al referido contrato el pago mensual es fijo de $199.00 por el termino de 25 años.

15. El vendedor que figura es de nombre Javier Vega-Representante de Ventas. Dirección electrónica: trustedenergy.mgbps@gmail.com.

16. Conforme al contrato entre el señor Elvin Caraballo y SUNRUN INC el diseño del sistema solar constaría de (1) Batería, (1) Inversor (13) Paneles Solares que producirían un estimado de 7,473 kWh en su primer año y una compensación aproximadamente de 142% de su actual estimado. El contrato consta en expediente administrativo.

17. En el contrato consta una firma mediante "DocuSigned by": Elvin Caraballo. (conforme declarado por el querellante la firma es escogida por ellos (en referencia a la compañía-vendedor)

18. El querellante, Elvin Caraballo, quien es comerciante, es residente con su esposa e hijas en el Barrio Pastillo Canas, solares Dr. Salas Solares 140 en Ponce Puerto Rico.

19. Atendido el testimonio de la parte querellante Elvin Caraballo este declaró que:

     a. Conoció de la compañía por un empleado que tenía a quien le montaron las placas y que lo recomendó con ellos.
     b. Por lo que llamó a persona de nombre Javier Vega de la compañía Bright Planet Solar.
     c. Llega a la semana y se le envió a una muchacha de nombre Raquel quien le orientó y de lo poquito que le dijo, básicamente ella, fue por la casa y le dijo yo te estoy diseñando un sistema robusto que va a tener un 150% de generación por encima de lo que usted genera en su casa y el querellante le indicó a ella, que tiene una piscina que se está terminando, le dijo que esa piscina va a aumentar obviamente, el costo de luz. Y ella le dijo "que con el sistema de 150% de energía por encima te va a funcionar la casa entera y le ofreció 5,265 kilos de producción y que le iba a correr la casa entera.
     d. Le dijo a Raquel que quería el sistema con dos baterías y ella le decía que con una batería bastaba.
     e. Que el contrato es de 1 Batería de 5,265 kilos; 13 paneles de 405Kilos de producción con 1 Bateria TESLA, 1 Inversor.
     f. Ella le enseñó una tableta como con un contrato así y no puso ninguna firma.
     g. Le informó a ella, el nombre, apellido, facturas de luz del consumo del año anterior.
     h. En la firma: ellos escogieron la firma y pusieron una firma: no le dijeron que esa firma era un DocuSigned, para el eran iniciales lo que él puso.

Ahí no le dieron el contrato; pensó que era una orientación: Después se comunicó con Javier Vega quien quedó en reunirse con él dos semanas después, pasaron dos semanas y no se reunió y entonces llegaron de Bright Solar a instalar el equipo y montaron 13 placas, el inversor y las baterías y le dijo que eran pocas y habló con Javier y le dijo dale break a que se acople el sistema. Que le indicó a Javier que eso no iba a producir y que tendría un pago fijo de $199 más el de Luma.

   i. Como ellos no sabían configurar el sistema al otro día llegó un técnico a configurarlo.

   j. El sistema empezó a caerse y faltaba la comunicación.

   k. En el año 2022 se instaló el sistema; en febrero de 2023 (SunRun PR Operations) desconectó el sistema.

   l. No ha pagado, nada. Paró el sistema de débito directo porque no le respondieron, no le orientaron bien.

   m. Del contrato recibido por correo electrónico no se lo explicó en detalle, ni explicaron del arbitraje; que permitió la instalación libre y voluntariamente, confiando.

20. Atendido el testimonio del querellante, en referencia al techo de su casa éste declaró:

   a. Compró la casa hace cuatro años y ahora subió recientemente, al techo de zinc y está podrido, no entiende como instalaron. Nunca él había subido al techo.

   b. La casa tiene dos niveles; abajo en cemento y arriba en madera con techo de zinc.

   c. No se había subido al techo: en esta semana (la de la vista administrativa) subió al techo y vio el zinc podrido.

   d. El cuarto de la hija es en el segundo nivel y está filtrando.

21. En cuanto al reclamo por fraude, declaró el querellante.

   a. Luego de que lo visitaron lo consideró un fraude porque recibió llamada de Javier Vega y cuando le reclama, nada, no le contesta, evade las llamadas, entonces considera eso como un fraude.

   b. Siempre le dijo a Javier Vega que quería que le aumentara la producción o que se llevara el equipo y Javier Vega le dijo que no se podía.

22. A preguntas del representante legal de la compañía Bright Ops (instalador del sistema), respondió el querellante que el vendedor Javier Vega le remitió una dama que le oriento que pagaría $199 con 5,395 Kw: que si había una tableta y sí había un contrato pero no le entregaron la tableta para marcar con su mano; que no recuerda si hubo llamada de verificación.

23. El querellante declaró en vista administrativa que siente molestia pues nadie lo escuchó: que llamó a

Tesla, llamó a SunRun, llamó al vendedor Javier Vega y nadie le dio la cara para darle opciones, que el sistema se caía.

24. En vista administrativa se presentó audio de la llamada de verificación generada por el vendedor Javier Vega (desde P.R.) a representante de SunRun de nombre Christian Muñoz, en la que se confirmó con el querellante, el número de teléfono y correo electrónico del querellante, que el contrato es por 25 años, con consumo anual de 7,473 y que al final puede cambiarlo por uno más grande; que de ampliar el sistema tiene un costo adicional; que si aumenta el consumo el sistema puede no resguardarlo; con pago mensual de $199; que le será enviado por correo electrónico copia del contrato; entre otros. La llamada fue generada antes de que se instalara el sistema fotovoltaico, fue generada en el mismo día de la contratación.

25. Ante ello el querellante declaró que informó para resolver su reclamo con gestiones de llamadas, no gestionó reclamo por carta, no gestionó proceso de arbitraje; informó de la piscina y ella Raquel la vio; le dijo además que tiene calentador y esta le dijo que el sistema es uno robusto que genera 150 kw más de lo que genera. El querellante reconoce que si aumenta el consumo de energía, él responde de ese aumento, que se tomó en cuenta el consumo del año anterior, pero que no le orientaron bien, del contrato recibido por correo electrónico no le explicaron en detalle ni del arbitraje; que permitió la instalación confiando.[5]

En desacuerdo, el 1 de mayo de 2025, Bright Ops radicó *Moción Solicitando la Regrabación de la Vista Administrativa.*[6] El 21 de mayo de 2025, tanto Bright Ops, como SunRun radicaron ante el DACo unas mociones de reconsideración, las cuales fueron rechazadas de plano, dado que el DACo no se expresó en torno a ellas.[7] Finalmente, el 20 de junio de 2025, Bright Ops radicó una *Segunda Moción Solicitando la Regrabación de la Vista Administrativa.*[8] El 1 de julio de 2025, DACo accedió a grabar la vista administrativa que se sostuvo en el pasado 4 de marzo de 2025.

Inconforme con el proceder de DACo, el 7 de julio de 2025, SunRun acudió ante este Tribunal mediante recurso de *Revisión Administrativa* y señala los siguientes errores:

**ERRÓ EL DACO-PONCE AL DECLARAR HA LUGAR LA QUERELLA RADICADA POR EL QUERELLANTE**

---

[5] Íd.
[6] Entrada #3, Anejo 12 del SUMAC TPI.
[7] Íd., Anejo 2 y 4 del SUMAC TPI.
[8] Íd., Anejo 14 del SUMAC TPI.

**ERRÓ EL DACO-PONCE AL DAR POR ADMITIDAS CIERTAS ALEGACIONES CUANDO EL TESTIMONIO DEL QUERELLANTE FUE IMPUGNADO CLARAMENTE DURANTE LA VISTA ADMINISTRATIVA**

**ERRÓ EL DACO-PONCE AL NO HABER TOMADO EN CONSIDERACIÓN EL CONTENIDO DE LA GRABACIÓN DE LA VERIFICACIÓN DE LLAMADA PRESENTADA DURANTE LA VISTA ADMINISTRATIVA Y SOMETIDA COMO EXHIBIT 2 DE LA REFERIDA VISTA**

**ERRÓ EL DACO-PONCE AL DETERMINAR QUE HUBO DOLO Y PRÁCTICAS Y ANUNCIOS ENGAÑOSOS CUANDO DURANTE LA VISTA ADMINISTRATIVA NO SE PRESENTÓ EVIDENCIA ALGUNA PARA SUSTENTAR DICHAS ALEGACIONES**

**ERRÓ EL DACO-PONCE AL DETERMINAR ATENDER EL ASUNTO CUANDO CARECÍA DE JURISDICCIÓN Y NO LO DESESTIMÓ PARA QUE EL MISMO FUERA ATENDIDO MEDIANTE ARBITRAJE**

Transcurrido el término que el señor Elvin Caraballo tenía para presentar su oposición al recurso, este no compareció a pesar de haber sido debidamente notificado.

## II.

### A. Revisión Judicial

La Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, mejor conocida como *Ley de Procedimiento Administrativo Uniforme,* establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. Bella Retail Group, Inc.,* 213 DPR 473, 484 (2024). Al revisar las determinaciones administrativas, este foro apelativo, está obligado a conceder deferencia a las decisiones de las agencias en vista de que estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que les han sido delegados. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025) (citando a *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012)).

En virtud de lo anterior, se ha considerado la razonabilidad de la actuación cuestionada como criterio rector al revisar el proceder de la agencia recurrida. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan, supra.* Así pues, debemos evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR, supra.* Por consiguiente, no puede otorgárseles un "sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho". *Capote Rivera v. Voilí Voilá Corp.,* 213 DPR 743, 754 (2024). Es decir, si bien debemos concederles una amplia deferencia a las determinaciones de las agencias administrativas, dicha norma no es absoluta. *Capote Rivera v. Voilí Voilá Corp., supra,* pág. 754.

A tenor, la deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Capote Rivera v. Voilí Voilá Corp., supra.* (citando a: *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021)).

En este sentido, existen tres aspectos que delimitan el alcance de la revisión judicial de las decisiones administrativas: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas. *Rolón Martínez v. Supte. Policía, supra,* pág. 36. Recientemente, nuestro más alto foro reiteró que **"al enfrentarse a**

**un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática [...]"**. *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025) (Énfasis nuestro).

La Sección 3.14 de la precitada ley dispone lo siguiente:

Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso.

La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.

3 LPRA § 9654. (Énfasis nuestro).

De conformidad con lo expuesto, se ha interpretado que una "orden o resolución final" es aquella que "dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes". *Pérez López v. Depto. Corrección,* 208 DPR 656, 672-673 (2022) (citando a *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 545 (2006)). En particular, la Sección 4.2 de dicha ley establece que:

**Una parte adversamente afectada por una orden o resolución <u>final</u> de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones,** dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido

mediante la presentación oportuna de una moción de reconsideración. 3 LPRA § 9672. (Énfasis nuestro).

### B. DACo

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor,* dispone todo lo concerniente a los poderes, funciones y deberes del DACo. En lo particular, el Artículo 3 de la Ley Núm. 5-1973, 3 LPRA sec. 341b, establece que el propósito primordial del DACo será proteger los derechos de los consumidores, frenar las tendencias inflacionarias; así como la fiscalización de un control de precios sobre los artículos y servicios de use y consumo. Asimismo, entre las facultades del DACo está el atender y resolver las querellas presentadas por los consumidores de bienes y servicios recibidos del sector privado. Art. 6 de la Ley Núm. 5-1973, 3 LPRA sec. 341e(c). Igualmente, esta agencia tiene como deber el poner en vigor, implementar y vindicar los derechos de los consumidores en cumplimiento con leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para resolver las querellas y conceder los remedios pertinentes conforme a Derecho. Art. 6 de la Ley Núm. 5-1973, 3 LPRA sec. 341e(d).

### C. El Dolo Contractual

En particular, el consentimiento de los contratantes se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que constituirán el acuerdo. Ahora bien, el consentimiento será nulo si se prestó por error, violencia, intimidación o dolo. Artículo 285 del Código Civil, 31 LPRA sec. 6191.

El dolo grave es la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. Es decir, el dolo, a través de la artimaña de motivar y persuadir a una de las partes a contratar lo consigue, cuando si no fuese a través de dicho acto no

hubiese pactado. *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659, 668 (1997). Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra. Art. 292 del Código Civil, 31 LPRA 6211. A su vez, el Tribunal Supremo ha definido el dolo como la omisión consciente, intencionada y voluntaria de eludir el cumplimiento de la obligación con conocimiento de que se realiza un acto injusto. *800 Ponce de León v. AIG,* 205 DPR 163, 182 (2020); *Colón v. Promo Motor Imports, Inc., supra,* pág. 668. Igualmente, el dolo se ha definido como palabras o maquinaciones insidiosas que inducen a que una de las partes firme un contrato que, sin ellas, no lo hubiera hecho. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008).

Por otra parte, nuestro Tribunal Supremo ha establecido que para que proceda el dolo no implica, necesariamente, un designio malévolo del deudor, sino solo conocimiento del hecho de su propio incumplimiento, consciente de que ha de afectar la expectativa del acreedor. *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 253 (2002). Además, nuestro más alto foro local no solo ha limitado al dolo como la acción de engañar, sino que también consiste en callar sobre una circunstancia importante relacionada con el objeto del contrato. *García Reyes v. Cruz Auto Corp., supra,* pág. 886. Ahora bien, para que el silencio pueda constituir dolo "es necesario que exista por la razón que sea, un deber de informar (así conforme la buena fe o a las opiniones del tráfico". *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 66 (2011) (citando a M. Albaladejo García, Derecho Civil: introducción y parte general, 17ma ed., Madrid, Ed. Edifoser, 2006, T. I, pág. 608). Es decir, se consuma el dolo cuando se mantiene silencio sobre una circunstancia importante del negocio jurídico entre las partes. Íd.; *García Reyes v. Cruz Auto Corp., supra,* pág. 886.

## D. Ley de Transacciones Electrónica

Con el fin de regular y reglamentar las transacciones electrónicas se adoptó la Ley Núm. 148 de 8 de agosto de 2006, según enmendada, mejor conocida como *Ley de Transacciones Electrónicas*. Esta, busca atemperar nuestro ordenamiento jurídico con los grandes adelantos en la tecnología informática en el ámbito comercial, lo cual ha facilitado que se puedan realizar por vía electrónica todo tipo de transacciones comerciales. Véase, Exposición de Motivos de la Ley Núm. 148-2006.

No obstante, esta Ley no aplicará a las siguientes transacciones: (1) las relacionadas con derecho de sucesiones; (2) las relacionadas con derecho de familia; (3) procesos judiciales; (4) terminación o cancelación de servicios básicos; (5) notificaciones sobre incumplimiento, aceleración, reposesión, ejecución, desahucio...; (6) a cancelación o terminación de una póliza de seguro médico o de vida; (7) notificaciones para retirar un producto del mercado o el aviso al público sobre un defecto esencial de un producto; (8) Transacciones efectuadas al amparo del Código Uniforme de Comercio (UCC)...; (9) Transacciones que estén legisladas o reglamentadas por la Ley Notarial; (10) Transacción que se declare excluida por ley especial; (11) transacción o acto que necesite requisito de forma conforme al Código Civil; (12) documentación que deba acompañarse con materiales peligrosos... Art. 3(b) de la Ley Núm. 148-2006, 10 LPRA sec. 4082.

En lo pertinente a la controversia que nos ocupa, la misma Ley define lo que significa firma digital y firma electrónica. En específico, el Artículo 2(12)(13) de la Ley Núm. 148-2006, 10 LPRA sec. 4081, dispone lo siguiente:

> **(12) "Firma digital" —** es un tipo de firma electrónica que se representa como un conjunto de datos, sonidos, símbolos o procesos en forma electrónica, creados por una llave privada que utiliza una técnica asimétrica para asegurar la integridad del mensaje de datos a través de un código de verificación, así como el vínculo

entre el titular de la firma digital y el mensaje de datos remitido. En la conversión de un mensaje con firma digital, la persona que tiene el mensaje o comunicación inicial y la llave pública del signatario puede determinar con exactitud si:

i. la conversión se realizó utilizando la llave privada que corresponde a la llave pública del signatario;

ii. el mensaje o comunicación ha sido alterado desde que realizó la conversión.

**(13) "Firma Electrónica" —** es la totalidad de datos en forma electrónica consignados en un mensaje, documento o transacción electrónica, o adjuntados o lógicamente asociados a dicho mensaje, documento o transacción, que puedan ser utilizados para identificar al signatario e indicar que éste aprueba la información recogida en el mensaje, documento o transacción.

Cónsono con lo anterior, los contratos firmados de forma digital y/o electrónicamente no se le restará efecto o validez legal por el mero hecho de estar en formato electrónico. Art. 7 de la Ley Núm. 148-2006, 10 LPRA sec. 4086. Es decir, el contrato electrónico tendrá igual efecto o validez legal que aquel que no fue realizado de forma electrónica. Íd.

### E. El Arbitraje

La Ley Federal de Arbitraje, 9 USC sec. 1 *et seq.*, establece una política federal en favor del arbitraje. La Ley Núm. 376 de 8 de mayo de 1951, según enmendada, 32 LPRA sec. 3201, mejor conocida como la *Ley de Arbitraje Comercial en Puerto Rico* (derogada)[9] fue diseñada y forjada, en gran parte, en el reflejo de la Ley Federal de Arbitraje, *supra.* A esos efectos, "el Tribunal Supremo federal, ha sostenido que cualquier duda que exista sobre el alcance de las controversias que pueden ser llevadas a arbitraje, debe resolverse a favor de ese mecanismo". *S.L.G. Méndez-Acevedo v. Nieves Rivera,* 179 DPR 359, 370 (2010).

El Artículo 1 de la Ley Núm. 376-1951, dispone que dos (2) o más partes podrán convenir por escrito al arbitraje, el cual una vez pactado, será válido, exigible e irrevocable salvo que existiera

---

[9] La Ley aplicable a los hechos de este caso es la Ley Núm. 376-1951, la cual fue derogada por la Ley Núm. 147 de 9 de agosto de 2024, mejor conocida como la actual *Ley de Arbitraje de Puerto Rico.*

fundamentos en derecho para su revocación. De modo que, el arbitraje es una figura inherentemente contractual, ya que esta se pacta por escrito y se puede exigir según conste en el acuerdo. *Constructora Estelar v. Aut. Edif. Pub.,* 183 DPR 1, 32 (2011); *Municipio Mayagüez v. Lebrón,* 167 DPR 713, 720 (2006); *Crufon v. Aut. Edif. Púbs.,* 156 DPR 197 (2002). Ante ello, lo que la Ley Núm. 376-1951 persigue es que los tribunales hagan cumplir los acuerdos de arbitraje negociados por las partes como cualquier otro contrato.

Empero, las partes tienen el derecho a dirimir ante los tribunales la obligación que surge de arbitrar. Art. 4 de la Ley Núm. 376-1951, 32 LPRA sec. 3204; *S.L.G. Méndez-Acevedo v. Nieves Rivera, supra,* pág. 367. "Así pues, si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto". *Aponte Valentín et al. v. Pfizer Pharm,* 208 DPR 263, 283 (2021).

Cónsono con lo anterior, si se acordó un acuerdo de arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento a que es ese el foro convenido. *S.L.G. Méndez-Acevedo v. Nieves Rivera, supra,* pág. 368; *Municipio Mayagüez v. Lebrón, supra,* pág. 721. Por último, es norma conocida, que el arbitraje constituye uno de los medios más apropiados y deseables para la resolución de controversias, ya que es menos técnico, más flexible y menos oneroso. *H.R., Inc. v. Vissepó & Diez Constr,* 190 DPR 597, 606 (2014).

**III.**

SunRun alega que erró el DACo al declarar "Ha Lugar" la *querella* radicada por el recurrido y, por tanto, dar por admitidas las alegaciones, cuando no se presentó evidencia de dolo contractual y el testimonio de este fue debidamente impugnado durante la Vista Administrativa. Igualmente, aduce que incidió el referido foro al no

haber tomado en consideración el contenido de la verificación de la llamada presentada en dicha Vista. Por último, sostiene que erró el DACo al atender la *querella* del recurrido cuando carecía de jurisdicción por haber una cláusula de Arbitraje.

Surge del expediente ante nos, que el señor Elvin Caraballo se comunicó con Javier Vega Camargo de Bright Panel Solar, para instalación de las placas solares. Luego, a su casa fue una vendedora de nombre Raquel Torres que lo orientó y le dijo que necesitaba trece (13) placas y una batería Tesla para cubrir toda la casa. En la *querella*, el recurrido alegó que le instalaron unas placas que no funcionan y no le corren toda la casa, como le dijo la vendedora. De igual forma, adujo que le envió unos contratos de financiamiento con SunRun, que nunca firmó, y que contienen unas firmas que la vendedora falsificó a computadora que no es la firma de este.

El 4 de marzo de 2024, se llevó a cabo la Vista Administrativa en DACo. Allí, compareció el señor Elvin Caraballo y la representación legal de las partes aquí querelladas. En el contrainterrogatorio, se transmitió la llamada de verificación del contrato en cuestión. En dicha llamada, el recurrido contestó lo siguiente:

**SR. CHRISTIAN:**
**Perfecto. Para comenzar, ¿podría, por favor, confirmar que todas las personas que hayan firmado este contrato se encuentran en el documento de propiedad o cuentan como un cónyuge o pareja doméstica de alguien en el contrato?**

**SR. ELVIN CARABALLO:**
**Sí.**

**SR. CHRISTIAN:**
**Suena correcto. Gracias por confirmar esta información. Ahora, yo veo aquí que el español es su idioma preferido. Y quiero preguntarle...**

**SR. ELVIN CARABALLO:**
**Sí.**

**SR. CHRISTIAN:**
**...¿le explicaron todo totalmente en español?**

**SR. ELVIN CARABALLO:**
**Sí.**

.       .       .       .       .       .       .       .

SR. CHRISTIAN:
Súper. Bien, continuamos. Su sistema fue diseñado con un pago mensual fijo de $199.28, por la vigencia de 25 años de su contrato, más impuestos sobre las ventas, si es que corresponde. ¿Esta información suena correcta para usted?

SR. ELVIN CARABALLO:
Sí, señor.

SR. CHRISTIAN:
Excelente. Y bien, después de que haya sido completado el estudio de su casa, usted podría recibir un diseño modificado. Y bien, el objetivo de este diseño finalizado es reflejar el diseño preliminar tan fielmente como sea posible, y a la vez poder producir 7,473 kilovatios hora, que es el 142% de la energía eléctrica que su casa consumió durante el año pasado.

SR. ELVIN CARABALLO:
Unjú.

SR. CHRISTIAN:
Ahora, Elvin, quiero que tenga en cuenta que el diseñar su sistema para ser más grande que su consumo actual podría afectar sus ahorros. Usted es responsable por cualquier beneficio o riesgo potencial asociado con este sistema más grande. ¿La información que he presentado para usted suena bien?

SR. ELVIN CARABALLO:
Sí.

SR. CHRISTIAN:
Maravilloso. Ahora quiero, quiero preguntarle si Javier ya se encargó de documentar o de revisar con usted el aviso de cancelación.

SR. ELVIN CARABALLO:
Sí.

**SR. CHRISTIAN:**
**Suena perfecto. Muy bien. Y gracias, Elvin, por confirmarle. Y nos quedan dos preguntas para terminar. Pasaremos ahora a hablar de sus baterías. Su solución Solar Brightbox solamente energizará a sus circuitos designados y podría no respaldar su residencia entera. Quiero preguntarle, Elvin, si Javier ya se encargó de documentar sus preferencias de respaldo.**

**SR. ELVIN CARABALLO:**
**Sí.**
(Énfasis nuestro).[10]

---

[10] Véase, Entrada #10, Anejo 10 "Transcripción de Vista Administrativa" (TVA) de SUMAC TA, págs. 80-83.

Luego, a preguntas del representante legal de uno de los querellados, el señor Elvin Caraballo alegó que no firmó el contrato porque se le mostró en una tableta que se firmaba bajo el sistema DocuSign. Sin embargo, se contradijo al afirmar en la llamada de verificación que en efecto había firmado el contrato.[11] Lo que a todas luces se desprende del testimonio del recurrido, es que no reconoce ni valida la firma electrónica que este realizó. No obstante, según explicamos los contratos firmados electrónicamente tendrán el mismo efecto o validez legal que aquel que no fue realizado de forma electrónica. Art. 7 de la Ley Núm. 148-2006, 10 LPRA sec. 4086. Así pues, aquí lo importante, es que el señor Elvin Caraballo reconoce que le explicaron los términos y condiciones del contrato, y que este entendió.[12] Incluso, confirmó que el contrato le fue entregado mediante correo electrónico.[13]

Por otra parte, DACo sostuvo en su determinación que el recurrido fue engañado, su consentimiento fue viciado y que no fue informado correctamente al celebrar un contrato del cual este confiaba que le correrían toda la casa. No estamos de acuerdo con tal apreciación. Veamos.

Surge del contrainterrogatorio, que el señor Elvin Caraballo estuvo consciente del contenido y alcance del contrato celebrado. Particularmente, este manifestó lo siguiente:

> P Okey. Muy bien. Entonces, usted sostuvo a preguntas de la Honorable Juez Administradora de que después de la instalación del sistema, usted instaló o culminó una instalación o construyó una piscina, ¿correcto?
>
> R Ya estaba instalada. Ya...
>
> P Por eso, pero, ¿no estaba operando?
>
> R No. Ya estaba operando.
>
> P Okey.
>
> R Porque ella la vio funcionando.

---

[11] Íd., pág. 107.
[12] Íd., pág. 86.
[13] Íd., pág. 95.

P Perfecto. Usted lo hizo bastante coetáneo a la fecha de...

R Reciente, estaba recién ya hecha.

P Recién. Okey. **O sea, lo que significa que cuando se hizo el ejercicio de su necesidad, ¿no se contempló esa piscina?**

**R No contemplaron la piscina.**

**P Correcto.**

**R No.**

**P ¿Verdad que no?**

**R Eso no.**

**P Pero ese consumo, usted como quiera lo está reclamando como parte de esta querella, de que se tiene un consumo superior a lo que tenía en aquel entonces, ¿correcto?**

**R Eso, eso es correcto.**

.      .      .      .      .      .      .      .

QUERELLANTE, SR. ELVIN CARABALLO:

La señora la vio funcionando hasta con calentador. Le dije: "Mira, tiene calentador esto y todo, todo". Cuando yo hago la asignación...

POR EL LCDO. NÉSTOR D. ZAMORA SANTOS:

P ¿Tiene calentador? ¿Tiene calentador también?

R Tiene calentador.

P Okey.

R Yo vengo y le digo a la joven: "Tiene calentador". Y ella: "No, no, eso es un sistema robusto, un 150 por encima de lo que usted genera". Yo estoy creyendo en lo que ella me está diciendo.

.      .      .      .      .      .      .      .

P Okey. Pero la realidad del asunto es que acaba de decir ahora, que aparte de que tiene una piscina que está funcionando, también tiene un calentador.

R [No se escucha respuesta verbal].

P Okey. **¿Y usted está completamente consciente de que cuando se hizo el ejercicio, cuando se adquirió el sistema y se firmó el contrato originalmente, se utilizó la necesidad del... previamen... del año previo a la instalación, correcto?**

**R Exacto. Sí.**

P ¿Y usted estaba consciente de que si usted interesaba ampliar...

R Unjú.

P ...tenía que hacer una solicitud a tales efectos y que ello podía conllevar un costo para usted?

R Exacto.
(Énfasis nuestro).[14]

De todo lo anterior se desprende que, el recurrido tenía conocimiento que en el momento que se firmó el contrato se utilizó las facturas de consumo del año anterior.[15] El mismo recurrido acepta que en la evaluación de necesidad no se contempló la piscina y el calentador de esta. Igualmente, reconoció que se le apercibió que al aumentar los equipos dentro del hogar podría incrementar el consumo, y que este sería responsable de ello.

Por tanto y según reseñamos, le correspondía al recurrido demostrar que SunRun cometió dolo contractual. No obstante, surge de la prueba y del propio testimonio del recurrido que no se cometió dolo, toda vez que pactó un contrato que cumplió con el consentimiento de los contratantes, así como de su oferta y aceptación. Por tal razón, resolvemos que incidió DACo al determinar que SunRun infringió en práctica engañosa, consentimiento viciado, incumplimiento contractual con el recurrido.

Por último, en cuanto a la cláusula de Arbitraje, el Contrato de SunRun Bright Box dispone lo siguiente:

ARBITRAJE. SI LAS PARTES NO PUEDEN RESOLVER LA DISPUTA DE MANERA INFORMAL, LA DISPUTA, INCLUYENDO LA DETERMINACIÓN DEL ALCANCE O LA APLICABILIDAD DE ESTE ACUERDO DE ARBITRAJE, SE DETERMINARÁ MEDIANTE ARBITRAJE VINCULANTE ANTE UN ÁRBITRO. EL ARBITRAJE SERÁ EL ÚNICO MEDIO DERESOLUCIÓN DE CONTROVERSIAS, SALVO QUE UNA DE LAS PARTES TENGA PERMITIDO PRESENTAR UNA RECLAMACIÓN ANTE UN TRIBUNAL QUE ENTIENDE

---

[14] Íd., págs. 97-105.
[15] Véase, Íd., pág. 115 (P ...se tomaron en cuenta las facturas del consumo de usted del año anterior, ¿es correcto? R Eso es así.)

EN CAUSAS MENORES (EN TANTO Y EN CUANTO EL MONTO CONTROVERTIDO SEA MENOR QUE EL LÍMITE DE RECLAMACIÓN PARA ESE TRIBUNAL) EN LUGAR DE SOMETERSE A ARBITRAJE, SIEMPRE QUE ESE TRIBUNAL TENGA COMPETENCIA SOBRE LA CONTROVERSIA, Y LA CONTROVERSIA SEA EXCLUSIVAMENTE EN SU NOMBRE Y NO EN NOMBRE DE OTRA PERSONA. SI LA CONTROVERSIA SE TRANSFIERE A OTRO TRIBUNAL O SE APELA ANTE OTRO TRIBUNAL EN CUALQUIER MOMENTO, SUNRUN SE RESERVA EL DERECHO DE OPTAR POR QUE LA CONTROVERSIA SE RESUELVA POR ARBITRAJE, CONFORME AQUÍ SE ESTIPULA. . .[16]

Ahora bien, entendemos que el DACo atendió la controversia porque entre las alegaciones de la *querella* el recurrido indicó que nunca firmó el contrato en cuestión.[17] No obstante, resolvemos que dicho contrato se pactó conforme a Derecho y, por tanto, tiene validez legal. Tal como se desprende la Vista Administrativa, el asunto del señor Elvin Caraballo giraba en torno a un problema de generación o cancelación del servicio que no debe ser atendido en DACo, sino ante un laudo de arbitraje. Así pues, si el recurrido desea continuar con el pleito, corresponde que dichas controversias se ventilen en un foro de arbitraje, en virtud del contrato emitido por las partes.

**IV.**

Por los fundamentos expuestos, revocamos la *Resolución* recurrida.

**Notifíquese.**

La Juez Grana Martínez concurre con la siguiente expresión. Según los hechos de este caso particular, estamos ante una controversia que debió ser atendida mediante arbitraje, conforme pactado por las partes. A tal efecto, concurro con mis compañeros en la revocación de la determinación del Departamento de Asuntos del Consumidor toda vez que el Departamento no ostenta

---

[16] Entrada #3, Anejo 16 "Customer Agreement (Contrato)" de SUMAC TPI, págs. 17-18.
[17] Véase, Entrada #10, TVA de SUMAC TA, pág. 68.

jurisdicción para atender una controversia que las partes acordaron someter a arbitraje.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones